**WALKER LAW GROUP, LLC**
Michelle S. Walker, Esquire (Atty. ID No. 84719)
33 Rock Hill Road, Suite 210
Bala Cynwyd, PA 19004
610.834.8566
mwalker@walkerlawgroupllc.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____

| | |
|---|---|
| **ROSKA DIRECT MARKETING, INC.** : <br> **D/B/A PULSECX** : <br> **211B PROGRESS DRIVE** : <br> **MONTGOMERYVILLE, PA 18936** : <br>      : <br>     Plaintiff    : <br>      : <br>   v.     : <br>      : <br> **LA JOLLA PHARMACEUTICAL** : <br> **COMPANY** : <br> **4550 TOWNE CENTRE COURT** : <br> **SAN DIEGO, CA 92121** : <br>      : <br>     Defendant    : | CIVIL ACTION <br> NO. _____ |

_____

## COMPLAINT

1.      Plaintiff Roska Direct Marketing, Inc. d/b/a PulseCX ("PulseCX"), by and through its undersigned counsel, brings this Complaint against defendant La Jolla Pharmaceutical Company ("LJPC") and, in support thereof, avers as follows:

## NATURE OF THE ACTION

2.      LJPC, a publicly-traded biopharmaceutical company, engaged PulseCX to provide certain marketing services that support LJPC's development and commercialization of therapeutics for life-threatening diseases. PulseCX provided those services at LJPC's direction, for LJPC's exclusive benefit and to LJPC's satisfaction, only to have LJPC abruptly cease

1

performance and stop work under the contract. Throughout PulseCX's performance of the contract, LJPC assured PulseCX that it would be paid for all services provided pursuant the parties' contract and PulseCX relied upon those assurances in continuing with performance of the work. However, when PulseCX sought payment for the services it provided prior to the stop work order, LJPC refused to pay for the benefits it received, in violation of the parties' agreement. LJPC has materially breached the terms of its contract. As a result of LJPC's actions, PulseCX has suffered substantial damages and brings this complaint against LJPC for direct and consequential damages arising out of LJPC's misconduct.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000 and there exists diversity of citizenship.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because LJPC regularly conducts business in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff PulseCX is a Pennsylvania domestic business corporation with its principal place of business at 211B Progress Drive, Montgomeryville, Pennsylvania 18936.

6. Defendant LJPC is a California domestic stock corporation with a principal place of business at 4550 Towne Centre Court, San Diego, California 92121.

## FACTUAL BACKGROUND

7. PulseCX is a small, healthcare marketing agency that specializes in optimizing the customer experience for pharmaceutical brands, medical devices, and over the counter products.

8. LJPC is a publicly-traded biopharmaceutical company focused on the discovery, development and commercialization of human therapeutics.

9. On or about September 1, 2018, PulseCX and LJPC entered into a Master Services Agreement dated September 1, 2018 ("Agreement") under which PulseCX agreed to provide certain marketing services to LJPC. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

10. The Agreement was valid for a three (3) year term unless or until terminated at will or for material breach by either party. Agreement at ¶7.1.

11. Services were to be provided under the Agreement as follows:

> 2. <u>Services</u>. Subject to the other terms of this Agreement, the Parties may, from time to time, execute SOWs in the form attached to this Agreement as Exhibit A (each a "**Statement of Work**" or "**SOW**") or in such other mutually acceptable format that achieves the same purpose as Exhibit A. Vendor shall provide the Services described in each SOW in a timely and professional manner and in accordance with all applicable laws. If such Services include the development of specific Work Product, the specifications of such Work Product shall be set forth on the relevant SOW. Each SOW, or similar documentation, must be executed by each of the Parties and shall at minimum describe the Services to be rendered and the cost for the Services. **Each SOW will be governed by this Agreement and in the event of a conflict between the terms of this Agreement and any SOW, the terms of this Agreement shall govern.** Any modification to the Services or cost of any SOW must be in a writing signed by an authorized representative of each Party. Payment for Services rendered hereunder shall be subject to the completion of such Services to the reasonable satisfaction of La Jolla.

Agreement at ¶2 (emphasis added).

12. Under its express terms, the Agreement governed all SOWs and services undertaken by PulseCX and expressly provided that **SOWs, whether or not signed, would not override or supersede the terms of the Agreement**:

3

> 11.7. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between La Jolla and Vendor and supersedes any and all other agreements and understandings between La Jolla and Vendor, whether oral or written, with respect to the subject matter hereof. This Agreement shall not be modified or amended in any manner except by a writing signed by both Parties. **The terms of this Agreement will govern all SOWs and Services undertaken by Vendor for La Jolla. Terms and conditions embedded in** customary standard-form purchasing/receiving documentation (such as quotes, **SOWs**, purchase authorization, scopes of work, exhibits, packing slips, invoices, fine print on reverse pages, etc.), **whether or not signed by one or both Parties, shall not modify, override or supersede the terms of this Agreement** unless they are explicitly incorporated into a SOW.

Agreement at ¶11.7 (emphasis added).

13. The Agreement clearly required LJPC to pay for all services rendered by PulseCX to LJPC:

> 3.1 <u>Payment of Fees</u>.  La Jolla shall pay Vendor [PulseCX] for all Services performed under this Agreement and any Statement of Work in accordance with terms set forth in such Statement. . . . Except as otherwise expressly provided in an SOW, La Jolla shall pay each invoice within thirty (30) days of receipt of said invoice. If payment is not received by Vendor within such thirty (30) day period, Vendor shall provide notice to La Jolla in writing of such unpaid invoice (e-mail is sufficient). Should La Jolla fail to make payment to Vendor on such unpaid amounts within fourteen (14) days of La Jolla's receipt of such written notice, La Jolla's nonpayment thereof shall be considered a default.

Agreement at ¶3.1.

14. The Agreement provided for termination for material breach as follows:

> 7.3. <u>Termination of Agreement for Material Breach</u>. Either Party may terminate this Agreement or any SOW for material breach of this Agreement by the other Party upon ten (10) days prior written notice specifying the nature of the breach, if such breach has not been cured within such ten (10) day period. If such notice of breach is for breach of a Work Statement, such notice shall note the specific SOW under which such breach is claimed.

Agreement at ¶7.3.

15. Upon termination for material breach, the Agreement provided for payment to PulseCX for all work completed through the date of termination:

> 7.4. <u>Effect of Termination</u>. In the event of termination prior to completion of the Services specified in any Work Statement, Vendor [PulseCX] shall be paid for all work completed through the date of termination, including reasonable and documented out-of-pocket expenses and, unless this Agreement is terminated by Vendor under Section 7.2, any non-cancelable commitments incurred by Vendor to the extent consistent with this Agreement. Vendor shall refund to La Jolla any prepaid amounts not earned by Vendor prior to the date of such termination.

Agreement ¶7.4.

16. Further, the Agreement provided that the prevailing party in any litigation to be brought thereunder would be entitled to recover attorneys' fees and costs:

> If any dispute arises between the Parties with respect to the matters covered by this Agreement which leads to a proceeding to resolve such dispute, the prevailing party in such proceeding shall be entitled to receive such prevailing party's reasonable attorneys' fees, expert witness fees and out-of-pocket costs incurred in connection with such proceeding, in addition to any other relief to which such prevailing party may be entitled.

Agreement ¶11.6.

17. In connection with the Agreement, on December 11, 2019, PulseCX CEO, Jay Bolling, met with LJPC's Chief Commercial Officer Darryl Wellinghoff and Terri Muller, LJPC's Director of Financial Planning, to discuss pending approvals of PulseCX 2020 purchase orders, including Statement of Work No. 2020-01 ("SOW 2020-01") (hereinafter, the "December 2019 Meeting").

18. At the December 2019 Meeting, both parties agreed that PulseCX would proceed with work in January 2020 in order to complete the Statement of Work required to conduct the

February 2020 National Sales Meeting. Ms. Muller, on behalf of LJPC, personally and expressly assured Mr. Bolling that, regardless of the purchase order status, LJPC would pay PulseCX for work completed for LJPC's benefit and/or at LJPC's direction.

19. Based upon the Agreement as well as the assurances from LJPC at the December 2019 Meeting, PulseCX proceeded to work from January 1 to January 30, 2020 in support of LJPC's product and brand. This work included client meetings with LJPC where LJPC continued to direct the work to be completed by PulseCx under SOW 2020-01 as well as ongoing development of work based on deadlines for the February 2020 National Sales Meeting and the launch of the new 2020 marketing and sales campaigns.

20. At LJPC's direction and for LJPC's exclusive benefit, PulseCX prepared sales brochures, websites, sales training, speaker slides, engaged in National Sales Meeting planning, and commercial planning. PulseCX's goal was 100% to support a new product being developed by LJPC and to help LJPC's commercial team achieve its goals in 2020.

21. Ostensibly, based upon LJPC's continued direction and consistent reassurances throughout the performance of the Agreement, PulseCX dedicated a substantial portion of its resources to LJPC's business throughout the month of January 2020 and delivered the highest quality of work to insure the success of LJPC's new product.

22. On numerous occasions, the LJPC team applauded PulseCX for its outstanding marketing services and work product and expressed their satisfaction with PulseCX's work and partnership. Indeed, LJPC was so pleased with PulseCX's work product that it requested that PulseCX develop two additional statements of work (SOW 2020-02 and SOW 2020-03) in support of their brand.

23. On January 31, 2020, LJPC abruptly and unilaterally directed PulseCX to stop work.

24. Pursuant to ¶3.1 of the Agreement, on February 11, 2020, PulseCX submitted an invoice seeking payment for all work performed and completed, at LJPC's direction and for LJPC's exclusive benefit, in January 2020. See PulseCx Invoice No. 4661 for $107,268.23, a true and correct copy of which is attached hereto as Exhibit "B.".

25. PulseCx provided written notice of the unpaid invoice to LJPC in emails dated March 20, 2020, March 25, 2020, April 9, 2020, and April 23, 2020, among others.

26. In emails dated March 23, 2020 and April 20, 2020, LJPC responded stating, among other things, "we are committed to paying for work that was completed, within reason" and "we are committed to paying for continuation of work into January but it needs to be with reason." While LJPC disputed the amount of the invoice, at no time did LJPC ever dispute PulseCX's entitlement to payment for work completed under the Agreement.

27. On May 8, 2020, PulseCX notified LJPC of its material breach of the Agreement and provided ten (10) days for LJPC to cure. A true and correct copy of the May 8, 2020 notice of material breach is attached hereto as Exhibit "C."

28. LJPC failed to cure its material breach of the Agreement and, accordingly, on May 26, 2020, PulseCX terminated the Agreement. A true and correct copy of the May 26, 2020 notice of termination is attached hereto as Exhibit "D."

29. PulseCx relied upon Agreement and LJPC's representations and assurances of payment for work completed to its detriment. Stated otherwise, but for the Agreement and LJPC's representations and assurances of payment, PulseCX would not have proceeded with the January 2020 work described in SOW 2020-01.

30. LJPC should have reasonably expected PulseCX to rely upon, act upon and/or forbear in reliance upon LJPC's representations.

31. As a result of LJPC's false promises, assurances, and representations, PulseCX has incurred and will continue to incur, damages, including attorneys' fees and expenses, arising out of LJPC's conduct, in excess of $75,000.

## COUNT I – BREACH OF CONTRACT

32. PulseCX incorporates by reference the averments of Paragraph 1 through 31 as if fully set forth herein.

33. LJPC has breached the Agreement for the reasons more fully set forth above by failing to pay for services provided by PulseCX.

34. LJPC's non-performance has frustrated PulseCX's performance under the Agreement.

35. PulseCX has performed fully all obligations on its part required to be performed under the Agreement.

36. Based on the foregoing allegations, LJPC has acted unreasonably and in a manner inconsistent with the reasonable expectations of the parties.

37. Based on the foregoing allegations, LJPC has acted in a manner which has adversely impacted PulseCX.

38. Based on the foregoing allegations, LJPC has acted in a manner which has frustrated the purpose and intent of the parties' reasonable expectations under the contract.

39. Based on the foregoing allegations, including LJPC's bad faith performance of the parties' contract, LJPC has breached the implied covenant of good faith and fair dealing.

40. As a direct and proximate result of LJPC's breach of contract, including breach of the implied covenant of good faith and fair dealing, PulseCX has suffered substantial damages, including, all payments due under the Agreement, lost business opportunity, and legal fees and costs.

WHEREFORE, plaintiff PulseCX respectfully requests judgment in its favor and against defendant LJPC as well as attorneys' fees, interest, costs of suit and other such relief as the Court deems proper and just under the circumstances.

## COUNT II – PROMISSORY ESTOPPEL

41. PulseCX incorporates by reference the averments of Paragraph 1 through 40 as if fully set forth herein.

42. At all times material hereto, the LJPC made representations, assurances and promises to PulseCX in connection with the performance of the Agreement, including payment for services performed under the Agreement.

43. But for LJPC's representations, assurances and promises of payment, PulseCX would not have continued performance under the Agreement.

44. LJPC should have reasonably expected PulseCX to rely upon, act upon and/or forbear in reliance upon LJPC's representations.

45. PulseCX relied upon LJPC's representations to its detriment.

46. As a result of LJPC's false promises, assurances and representations to PulseCX, PulseCX has incurred damages. Injustice can be avoided only by enforcing LJPC's promises.

WHEREFORE, plaintiff PulseCX respectfully requests judgment in its favor and against defendant LJPC as well as attorneys' fees, interest, costs of suit and other such relief as the Court deems proper and just under the circumstances.

### COUNT III – UNJUST ENRICHMENT

47. PulseCX incorporates by reference the averments of Paragraph 1 through 46 as if fully set forth herein.

48. Upon information and belief, as a result of misconduct described herein, LJPC has been able to extract significant benefits from PulseCX without payment therefor.

49. Upon information and belief, LJPC has been unjustly enriched by, and benefited from, the misconduct hereinbefore described, to the detriment of PulseCX.

50. Under such circumstances, it is inequitable for LJPC to retain such benefits without payment therefor.

51. As a direct and proximate result of LJPC's misconduct, PulseCX has suffered substantial damages, including, all payments due under the Agreement, lost business opportunity and legal fees and costs.

WHEREFORE, plaintiff PulseCX respectfully requests judgment in its favor and against defendant LJPC, as well as attorney's fees, interest, costs of suit and other such relief as the Court deems proper and just under the circumstances.

Respectfully submitted,

**WALKER LAW GROUP, LLC**

__/s/ Michelle S. Walker MSW1919___
MICHELLE S. WALKER, ESQUIRE
33 Rock Hill Road, Suite 210
Bala Cynwyd, PA 19004
610.834.8566
*Attorneys for Plaintiff*

Dated: June 12, 2020